1

2

3

4

5

6

7

8               UNITED STATES  DISTRICT COURT

9                 Northern District of California

10                     San Francisco

11   PACIFIC GAS & ELECTRIC COMPANY,          No. C 10-05288 SBA (LB)

12        Plaintiff and Counterdefendant       **REPORT AND RECOMMENDATION
             v.                                RE: SEIU LOCAL 24/7'S MOTION**
13                                             **FOR ATTORNEYS' FEES**
     SEIU LOCAL 24/7,
14
          Defendant and Counterclaimant.
15   _____/

16                    **I.  INTRODUCTION**

17        This report and recommendation addresses Defendant's motion for attorneys' fees, which the

18   district court referred to this court.  *See* Stipulation and Order, ECF No. 31.[1]  Plaintiff Pacific Gas &

19   Electric Company ("PG&E") filed this action against SEIU Local 24/7 ("the Union") to vacate an

20   August 10, 2010 Arbitrator's Opinion and Award ("Award").  *See* Compl., ECF No. 1.  On March 2,

21   2011, the Union filed a motion for judgment on the pleadings, ECF No. 14, which the district court

22   granted on January 30, 2012, Order, ECF No. 28.  For the reasons explained below, the court

23   RECOMMENDS GRANTING the Union's Motion for Attorneys' Fees.

24                        **II.  FACTS**

25        These proceedings arose out of a dispute between PG&E and the Union, which is the exclusive

26   collective bargaining representative of security officers ("officers") employed by PG&E at its

27   _____

28        [1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronic page
     number at the top of the document, not the pages at the bottom.

Diablo Canyon Power Plant. Mot., ECF No. 33 at 7. In 2007, the Union filed a grievance asserting that PG&E failed to compensate the officers for certain meal periods in violation of the parties' collective bargaining agreement ("Agreement"). Order, ECF No. 28 at 2. Unable to resolve their dispute themselves, the parties submitted to arbitration as per the Agreement. *Id.* The center of the dispute was the meaning of Section 15.2 of the Agreement, which provides:

> Except as provided in Section 15.5 hereof, nothing contained herein shall be construed to require [PG&E] to compensate employees for meals or meal periods during regular work hours on workdays.
>
> [PG&E] may assign an employee to a regular work schedule which would include a paid ½ hour meal period. During the ½ hour paid meal period, the employee will be subject to being on call and will respond if necessary to Plant and/or security emergencies. (Added 1-1-00)

ECF No. 28 at 3. As discussed in the district court's Order, the arbitrator found that the first paragraph of Section 15.2 seemed clear on its own. *Id.* When read in tandem with the second paragraph of Section 15.2, however, the first paragraph was ambiguous. *Id.* To resolve the ambiguity, the arbitrator considered the parties' stipulation that Section 15.2 created an exception to the Agreement's general rule regarding compensation for meal breaks and she construed the scope of that exception. *Id.* at 5-6. The arbitrator construed the Agreement in the Union's favor and against PG&E. *Id.* at 5.

In this action, PG&E moved to vacate the Award, arguing that it was contrary to the express language of the first paragraph of Section 15.2. On January 31, 2012, the district court granted the Union's motion for judgment on the pleadings. *Id.* The district court characterized the arbitrator's judgment as "clearly based on" the Agreement and noted "[t]hat PG&E disagrees with the Arbitrator's construction is not a cognizable basis to vacate the Award." *Id.*

### III. LEGAL STANDARD

Under the "American Rule," each party to a lawsuit is generally responsible for its own attorneys' fees. *Hensley v. Eckerhart*, 471 U.S. 424, 429 (1983). Nonetheless, federal courts have the inherent power to "assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32. 47 (1991) (cited by Opp'n, ECF No. 37 at 12; and Reply ECF No. 39 at 5), *accord Virginia Mason Hosp. v. Washington*

*State Nurses Association*, 511 F.3d 908, 917 (9th Cir. 2007) (applying standard to challenge to

arbitration award).  Beyond these relatively general statement, the parties disagree about the

applicable legal standard.  Thus, the court first will decide the correct legal standard and then apply

that to the facts here.

## IV.  DISCUSSION

### A.  <u>The Court's Inherent Power to Sanction</u>

The parties dispute the level of culpability necessary before the court can sanction (and thus

assess fees) under its inherent powers.  PG&E suggests that a court must find subjective bad faith

before it may impose sanctions.  Opp'n, ECF No. 37 at 13.  For this point, PG&E primarily relies on

*Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001), which states that inherent power sanctions must

be based upon a specific finding of recklessness and an additional "factor such as frivolousness,

harassment or an improper purpose."  The Union does not dispute this  point, *see* ECF No. 39 at 6,

but argues that this "recklessness plus" standard does not rise to the level of a subjective bad faith

requirement.  *Id.* at 7.  In fact, as the Union correctly points out, *Fink* expressly rejects such a bad

faith requirement.  There, the Ninth Circuit held that the district court abused its discretion in

declining to impose sanctions because it had "misapprehended the scope of its inherent authority" by

considering subjective bad faith to be required and remanded for reconsideration.  *Fink*, 239 F.3d at

994.  Accordingly, the court finds that *Fink* does not support PG&E's argument.

PG&E bolsters its subjective bad faith argument with citations to additional Ninth Circuit cases,

none of which are persuasive.  *See* ECF No. 37 at 12-13.  The only cited authority that mentions

subjective bad faith is *Oregon RSA No. 6, Inc. v. Castle Rock Cellular of Oregon Ltd. P'ship*, 76

F.3d 1003, 1007 (9th Cir. 1996).  *See id.*  Although *Oregon RSA No. 6* states in dicta that sanctions

under a court's inherent powers "require a court to make a finding of subjective bad faith," its

holding was limited to the procedural question of whether a court must hold a hearing before

imposing sanctions under its inherent powers.  *Id.* at 1007-08.  This court finds persuasive the

overwhelming weight of subsequent Ninth Circuit authority requiring bad faith or, in the alternative,

"recklessness plus" for sanctions.  *See, e.g., Fink*, 239 F.3d at 994; *B.K.B. v. Maui Police Dept.*, 276

F.3d 1091, 1107-08 (9th Cir. 2002) (explaining that inherent power "sanctions are available if the

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1  court specifically finds bad faith or conduct tantamount to bad faith" or any of "a variety of willful

2  actions, including recklessness when combined with an additional factor such as frivolousness,

3  harassment, or an improper purpose").

4  **B.  Whether PG&E's Conduct Constitutes Bad Faith**

5      Having determined that subjective bad faith is not required, the court now turns to the question

6  of whether PG&E's challenge to the arbitrator's award is sanctionable.  According to the Union,

7  PG&E's Complaint to Vacate was based solely on its disagreement with the arbitrator's

8  interpretation of the Agreement, and unsuccessful attacks on arbitral awards "premised on a

9  disagreement with the arbitrator's interpretation of the contract are inherently unjustified" and

10  warrant a fee award.  ECF No. 39 at 9-10.  Furthermore, the "unjustified refusal to abide by an

11  arbitrator's award may equate [to] an act taken in bad faith, vexatiously or for oppressive reasons."

12  ECF No. 33 at 11 (quoting *Int'l Union of Petroleum & Indus. Workers v. W. Indus. Maint.*, 707 F.2d

13  425 (9th Cir. 1983) (quotation marks omitted); *see also SSA Terminals v. Machinists Auto. Trade

14  Dist. Lodge No. 190*, 244 F. Supp. 2d 1031, 1038-39 (N.D.Cal. 2003) (same); *Int'l Bhd of Painters,

15  Local Union No. 756 v. Sherwin Williams Co.*, No. CA 3-79-289-F, 1981 WL 2428, at *4 (N.D. Tex.

16  Apr. 15, 1981) (same); *Sheet Metal Workers' Int'l Assoc. Local Union No. 359 v. Madison Indus.*,

17  84 F.3d 1186, 1192 (9th Cir. 1996) (same).  PG&E attempts to distinguish these cases on their facts,

18  noting that the employers in most of the cited cases simply ignored an adverse arbitral decision, as

19  opposed to filing a complaint to vacate.  ECF No. 37 at 16.  While PG&E is correct that these cases

20  generally present clearer examples of sanctionable conduct, they still stand for the general

21  proposition that the unjustified refusal to abide by an arbitration award, particularly in a dispute

22  under a collective bargaining agreement, may support an attorneys' fees award.  *See, e.g., SSA

23  Terminals,* 244 F. Supp. 2d at 1039-40 (citing and applying *Int'l Union of Petroleum & Indus.

24  Workers*, 707 F.2d at 428).

25      In order to evaluate whether PG&E's Complaint to Vacate was unjustified, the court must

26  consider the strength of PG&E's argument in light of the applicable standard of review.  It is well

27  settled that judicial scrutiny of a labor arbitrator's award is extremely limited.  *S.Cal. Gas Co. v.

28  Util. Workers Union of Am., Local 132, AFL-CIO*, 265 F.3d 787, 792 (9th Cir. 2001) (cited in Order,

UNITED STATES DISTRICT COURT
For the Northern District of California

1   ECF No. 28 at 4).  Judicial review of an arbitral decision interpreting a collective bargaining

2   agreement merely inquires "*whether* the arbitrator interpreted the collective bargaining agreement,

3   *not* whether he did so correctly."  *Hawaii Teamsters & Allied Workers Union, Local 996 v. United*

4   *Parcel Service*, 241 F.3d 1177, 1178 (9th Cir. 2001).  An arbitral award must be upheld if "it draws

5   its essence from the collective bargaining agreement."  *United Steelworkers of Am v.* Enter. Wheel &

6   Car Corp., 363 U.S. 593, 597 (1960).  "So long as the arbitrator's decision is 'plausible,' the award

7   must be upheld even if the 'decision finds the facts and states the law erroneously' or is 'based on a

8   misreading of the CBA.'" (Order, ECF No. 28 at 5) (quoting *SFIC Props., Inc. v. Dist. Lodge No.*

9   *94*, 103 F.3d 923, 925-26 (9th Cir. 1996)).

10      Despite the extremely deferential standard of review, PG&E argues that its Complaint to Vacate

11   was justified because it was based on Ninth Circuit authority supporting its position that the Award

12   was not based on the Agreement.  ECF No. 37 at 10-11 (citing *United Food & Commercial Workers*

13   *Union Local 1119 v. United Markets, Inc.*, 784 F.2d 1413, 1415-16 (9th Cir. 1986) ("*United*

14   *Markets*")).  PG&E's reliance on *United Markets* is not justified.  According to PG&E, *United*

15   *Markets* stands for the proposition that "vacatur of an arbitral award was appropriate when an

16   arbitrator turned a clearly contractual 'no' into an arbitral 'yes.'"  ECF No. 37 at 11.  Stated

17   differently, PG&E's argument is that vacatur is appropriate when the arbitral award does not stem

18   from a plausible reading of the collective bargaining agreement.  But the Ninth Circuit rejected a

19   similar argument based on *United Markets* and explained that the *United Markets* standard is only

20   another way of formulating the rule that an arbitrator may not dispense his own brand of industrial

21   justice.  *See Hawaii Teamsters and Allied Workers Union*, 241 F.3d at 1183.  The underlying rule

22   remains that an arbitrator's award is overturned only when it is clear from the award or decision

23   "that the arbitrator did not base his decision on an interpretation of the collective bargaining

24   agreement or that he disregarded what the parties put before him and instead followed his own

25   whims or biases."  *Id.* (quoting *Garvey v. Roberts*, 203 F.3d 580, 588 (9th Cir. 2000)).

26      Nor do the cases PG&E cites suggest that a fee award would be inappropriate in this case.  For

27   example, PG&E compares this case to *Virginia Mason Hospital*, 511 F.3d at 915.  In that case, the

28   Ninth Circuit refused to hold that an employer's challenge to an arbitral award was prima facie

UNITED STATES DISTRICT COURT
For the Northern District of California

1   evidence of bad faith, finding that the challenge was motivated solely by legitimate public policy

2   grounds.  *Id.* (challenge was based on a sincere desire to protect patients from infection).  No such

3   justification supports PG&E's challenge.

4       Nor does *The Sequoias-San Francisco v. SEIU, United Healthcare Workers-West*, counsel

5   against an award of fees.  No. C 09-05279 WHA, 2010 WL 1135793 (N.D. Cal. Mar. 22, 2010).

6   There, the employer's "understandable" belief that a collective bargaining agreement had a clear cut

7   arbitration deadline did not support a finding of bad faith.  *Id.* at *6-8 (nonetheless upholding award

8   because an arbitrator's supplementing clear language of a collective bargaining agreement is not

9   ignoring the plain language of the agreement).  PG&E has not made a similar showing here.

10      In fact, the district court rejected PG&E's arguments.  In granting the Union's motion for

11   judgment on the pleadings, the district court noted that the Award was "clearly" based on the

12   Agreement, that PG&E's complaint represented a disagreement with the arbitrator's construction of

13   the Agreement, and that this was not a cognizable basis to vacate the Award.  ECF No. 28 at 6.

14      "Because of the deference courts owe to arbitral tribunals, a challenge to an arbitral decision

15   based only on the merits of the case is frivolous because it is destined to fail."  *SSA Terminals*, 244

16   F. Supp. 2d at 1040.  Given the extraordinarily deferential standard of review and the district court's

17   conclusion that PG&E's challenge to the Award was based on its disagreement with the arbitrator,

18   this court finds that PG&E's Complaint to Vacate was unreasonable, unjustified, and frivolous.  As

19   the court noted in *SSA Terminals*, "[a] careful reading of the Award should have convinced

20   Petitioner of the futility of moving this court to vacate the award."  *Id.*  Because the entirety of this

21   action was unreasonable, the court RECOMMENDS GRANTING the Union attorneys' fees motion

22   and awarding all of the fees reasonably incurred in this action.[2]

23   **C.  Calculating the Appropriate Fees Awarded**

24      Having determined that a fee award is appropriate, the court must calculate the appropriate

25   _____

26      [2]  The parties' briefs address ancillary issues, such as the timing of this case, the parties'

27   conduct during settlement negotiations, and alleged delays in implementing the remedy award.  *See, e.g.,* ECF No. 33 at 14-15; ECF No. 37 at 7-10, 19; ECF No. 39 at 14-17.  The parties' arguments

28   have no bearing on the court's recommendation, which is based solely on the fact that PG&E Complaint to Vacate was unjustified and frivolous.

UNITED STATES DISTRICT COURT
For the Northern District of California

1 amount.  The Union requests an award of $146,582.00.  ECF No. 37 at 20; ECF No. 39 at19.  In the

2 Ninth Circuit, the proper method for determining reasonable attorneys' fees is to use the "lodestar

3 method."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Jordan v. Multnomah Cnty.*, 815 F.2d

4 1258, 1262 (9th Cir. 1987).  Under this method, the trial court calculates attorneys' fees by

5 multiplying the number of hours reasonably spent by counsel by a reasonable hourly rate.  *Morales*

6 *v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996).  In setting the rate, the district court should

7 also consider the factors set forth in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70 (9th Cir.

8 1975).  The *Kerr* factors are: (1) the time and labor required; (2) the novelty and difficulty of the

9 questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of

10 other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether

11 the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the

12 amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys;

13 (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with

14 the client; and (12) awards in similar cases.  *Id.*

15 After deciding the appropriate hourly rate, the district court may then examine the fee applicant's

16 contemporaneously recorded billing records and exclude from the lodestar amount hours that are

17 "excessive, redundant, or otherwise unnecessary."  *Hensley*, 461 U.S. at 434. Then, in appropriate

18 cases, the district court may adjust the lodestar figure based upon the *Kerr* factors that were not

19 subsumed into the initial lodestar calculation.  *McGrath v. Cnty. of Nevada*, 67 F.3d 248, 252 (9th

20 Cir. 1995).  There is a strong presumption that the lodestar figure represents a reasonable fee and

21 any upward or downward adjustment of that figure is proper only in "rare and exceptional cases."

22  *Van Gerwen v. Guar. Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (internal citations

23 omitted).

24 **1. Whether the Requested Hourly Rates are Reasonable**

25 The first step in the lodestar analysis requires the district court to determine a reasonable hourly

26 rate for the fee applicant's services.  This determination is made by examining the prevailing market

27 rates in the relevant community charged for similar services by "lawyers of reasonably comparable

28 skill, experience and reputation."  *Hensley*, 461 U.S. at 433; *Blum v. Stevenson*, 465 U.S. 886, 895 n.

UNITED STATES DISTRICT COURT
For the Northern District of California

1  11 (1984); *Davis v. City and Cnty. of San Francisco*, 976 F.2d 1536, 1545-46 (9th Cir. 1992).  The

2  "relevant community" for these purposes is the district in which the lawsuit proceeds.  *Barjon v.*

3  *Dalton*, 132 F.3d 496, 500 (9th Cir. 1997); *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir.

4  1992).

5      The fee applicant has the burden of producing satisfactory evidence, in addition to the affidavits

6  of its attorneys, that the requested rates are appropriate.  Once the fee applicant has met its burden,

7  the opposing party "has a burden of rebuttal that requires submission of evidence to the district court

8  challenging the accuracy and reasonableness of the hours charged or the facts asserted by the

9  prevailing party in its submitted affidavits."  *Gates*, 978 F.2d at 1397.  A district court may also

10  consider its own expert knowledge and experience in setting an hourly rate for the lodestar

11  calculation.  *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011).

12      Plaintiffs can satisfy their burden of production in various ways.  Affidavits of the fee applicant's

13  attorney and other attorneys regarding prevailing fees in the community, and rate determinations in

14  other cases, particularly those setting a rate for the attorneys, may be sufficient to establish

15  reasonable hourly rates.  *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th

16  Cir. 1990); *Davis*, 976 F.2d at 1547; *see Blackwell v. Foley*, 724 F. Supp. 2d 1068, 1079 (N.D. Cal.

17  2010) (looking to rates awarded to counsel in previous cases as evidence of the market value of their

18  services).  That said, reasonable hourly rates are "not made by reference to rates actually charged the

19  prevailing party."  *Schwarz v. Sec'y of Health and Human Servs.*, 73 F.3d 895, 908 (9th Cir. 1995)

20  (quotation omitted).

21      The Union's attorneys request hourly billing rates of $795 for Mr. Demain, $725 for Ms.

22  Cervantez, $410 for Ms. Arkush, and $215 for paralegal support.  ECF No. 33 at 16.  PG&E does

23  not challenge the reasonableness of the hourly rates sought for work performed by Ms. Arkush or for

24  paralegal time.  ECF No. 37 at 19.  Therefore, the court recommends the district court award these

25  fees at the full hourly rates requested by counsel.

26      On the other hand, PG&E opposes the requested hourly rates of Ms. Cervantez and Mr. Demain.

27  ECF No. 37 at 18-20.  Ms. Cervantez and Mr. Demain provide substantial evidence documenting the

28  reasonableness of their hourly rates.  *See* Cervantez Decl., ECF No. 34 at 3-10; Exs. D-K.  The

UNITED STATES DISTRICT COURT
For the Northern District of California

1 | evidence includes their professional biographies and accolades, fees awarded in other, comparable

2 | cases, and information about the rates they charges clients in commercial cases. *Id.* The court notes

3 | that fees assessed at Ms. Cervantez's 2011 hourly rate of $700 were awarded in *Holloway v. Best*

4 | *Buy*, No. 4:05-cv-05056-PJH (N.D. Cal. Nov. 9, 2011). ECF No. 34 at 7, ¶ 23, Ex. E. Similarly,

5 | Mr. Demain's 2006 hourly rate of $525 was approved by Alameda County Superior Court in *Int'l*

6 | *Union of Bricklayers and Allied Craftworkers, Local 3 California AFL-CIO v. Italian Marble and*

7 | *Tile, Inc.*, Case No. RG06265339. *Id.* at 9, ¶ 25, Ex. K After carefully reviewing this evidence, the

8 | court finds that the Union has met its burden to establish the reasonableness of its hourly rates.

9 | PG&E, therefore, bears a burden of rebuttal. *See Gates*, 978 F.2d at 1397. PG&E devotes just

10 | three paragraphs to meeting this burden. ECF No. 37 at 19-20. PG&E characterizes the requested

11 | rates as "astronomical," notes that this case was efficiently litigated, cites, without analysis, cases in

12 | which lower hourly rates were awarded, and declares that its attorneys charge hundreds of dollars

13 | per hour less than Ms. Cervantez and Mr. Demain. *Id.* PG&E's conclusory arguments fall well

14 | short of their burden of rebuttal. Accordingly, the court recommends the district court grant Ms.

15 | Cervantez and Mr. Demain the hourly rates they request.

16 | **2. Whether the Number of Hours Requested is Reasonable**

17 | The Union attorneys request the court award the Union for 199.1 hours of their billable time,

18 | allocated as indicated below:

| Timekeeper | Hours | Hourly Rate | Lodestar |
|---|---|---|---|
| Jeffrey B. Demain | 90.4 | $795 | $71,868.00 |
| Eve H. Cervantez | 98.8 | $725 | $71,630.00 |
| Anne N. Arkush | 4.9 | $410 | $2,009.00 |
| Paralegal | 5.0 | $215 | $1,075.00 |
| Total | 199.1 | | $146,582.00 |

25 | According to their submissions, the Union's counsel spent 159.8 hours litigating the case and

26 | drafting the initial fees motion, 31.3 hours on the reply, and they expect to spend another 8 hours

27 | finalizing the reply brief and preparing for and attending the hearing on this motion. ECF No. 39 at

28 | 18. Furthermore, they claim to have exercised billing judgment, and omitted excessive and

UNITED STATES DISTRICT COURT
For the Northern District of California

1   unreasonable time.  Cervantez Decl., ECF No. 34 at 5, ¶ 14.  "An attorney's sworn testimony that, in

2   fact, it took the time claimed is evidence of considerable weight on the issue of the time required."

3   *Blackwell v. Foley*, 724 F. Supp. 2d 1068, 1081 (N.D. Cal. 2010) (internal punctuation and citations

4   omitted).  On this basis, the court finds that the Union has met its burden of establishing the

5   reasonableness of the time it expended in this matter.  Moreover, because PG&E does not challenge

6   the number of hours expended, and they appear reasonable, the court recommends the district court

7   award the Union 199.1 hours, as requested.[3]

8                                           **V.  CONCLUSION**

9       The court **RECOMMENDS** that the district court **GRANT** Plaintiff's Motion for Attorneys'

10  Fees in the amount of **$146,582.00**.  Any party may file objections to this Report and

11  Recommendation with the district judge within 14 days after being served with a copy.  *See* 28

12  U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); Civil L.R. 72-3.  Failure to file an objection may waive

13  the right to review of the issue in district court.

14      **IT IS SO ORDERED.**

15  Dated: May 25, 2012

16                                          _____
                                            LAUREL BEELER
17                                          United States Magistrate Judge

18

19

20

21

22

23

24

25  _____

26      [3]  The court notes that counsel for the Union have not submitted their contemporaneously

27  recorded billing entries.  Instead, they have submitted the overall calculations and offered to submit
    contemporaneously recorded records to the court for *in camera* review.  Because PG&E does not

28  challenge the number of hours requested, which seem reasonable to the court, the court need not
    review the records *in camera*.